1 | MESSNER REEVES LLP
2 | Robert B. Hinckley, Jr. (CA State Bar No. 290786)
  | rhinckley@messner.com
  | Melissa L. Deni (CA State Bar No. 307847)
3 | 11620 Wilshire Blvd., Suite 500
  | Los Angeles, CA 90025
4 | Telephone: (310) 909-7440
  | Facsimile: (310) 889-0896

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| BIANCA ABOYTES, | ) | Case No.: |
|---|---|---|
| Plaintiff, | ) | **NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.** |
| v. | ) | |
| CHIPOTLE MEXICAN GRILL, INC., and DOES 1 through 75, inclusive, | ) | |
| Defendants | ) | Action Filed:  June 28, 2017<br>Removal Date: August 17, 2017<br>Trial Date:     Not Set |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle"), by and through undersigned counsel, hereby removes this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. In support of its removal, Chipotle states as follows:

1. <u>Complaint Filed June 28, 2017</u>. On June 28, 2017, Plaintiff Bianca Aboytes commenced this civil action by filing a Complaint in the Superior Court of the State of California for the County of Orange, captioned *Bianca Aboytes v. Chipotle Mexican Grill, Inc., and DOES 1 through 75, inclusive*; Case No. 30-2017-00928839-CU-PO-CJC. True and correct copies of the Complaint for Damages, Statement of Damages, Summons and Civil Cover Sheet are filed herewith as **Exhibit A**.

2. <u>Chipotle was served with the Complaint on July 20, 2017.</u> Defendant was personally served on July 20, 2017. A true and correct copy of the Proof of Service is filed herewith as **Exhibit B**.

3. <u>Chipotle Answered the Complaint on August 16, 2017</u>. Chipotle filed its Answer to the Complaint in the Orange County Superior Court on August 16, 2017. A true and correct copy of that Answer is filed herewith as **Exhibit C**.

4. <u>Other Filings</u>. The Orange County Superior Court issued a Notice of Case Assignment on June 28, 2017. On July 31, 2017, Plaintiff filed a Proof of Service of Summons. On August 7, 2017, the Orange County Superior Court issued a Notice of Hearing. True and correct copies of these documents are filed herewith as **Exhibit D**.

5. There are no other documents of which Chipotle is aware that are on file with the Orange County Superior Court in this action.

6. <u>Removal Timely</u>. This Notice of Removal is timely as it is filed within 30 days of Chipotle being served with the Complaint.

7. The action is pending in the Orange County Superior Court, which court is in the territory of the United States District Court for the Central District of California.

**NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.**

8. <u>Diversity Jurisdiction Proper</u>.  This matter is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be removed to this Court by Chipotle pursuant to 28 U.S.C. § 1441(a), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. <u>Diversity of Citizenship Exists Between Parties</u>.  Plaintiff at all times relevant was domiciled and a resident of the State of California. (*See* **Exhibit A**, Complaint for Damages, ¶ 7.)  As discussed in detail below, Chipotle is a citizen of the States of Delaware and Colorado.  Therefore, diversity of citizenship exists and supports removal under 28 U.S.C. § 1332(a).  Although the Complaint names "Doe" defendants, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

10. <u>Defendant Chipotle Mexican Grill, Inc. is a Citizen of Delaware and Colorado.</u>  Defendant in this action is diverse.  For diversity purposes, under 28 U.S.C. §1332(c)(1), a corporation is deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has a principal place of business.  Chipotle is a defendant and is diverse as it is a Delaware corporation with its principal place of business in Colorado. (*See* Declaration of Esther Smiley at ¶ 4.  A true and correct copy is filed herewith as **Exhibit E**).

11. <u>Chipotle Mexican Grill, Inc. is a Delaware Corporation.</u>  A corporation is a citizen both of the state in which it is incorporated and of the state where it has its principal place of business.  See 28 U.S.C. § 1332(c).  Chipotle Mexican Grill, Inc. is incorporated under the laws of Delaware. (*See* **Exhibit E** at ¶ 4.)

12. <u>Defendant Chipotle Mexican Grill's Principal Place of Business is in Colorado.</u>  Under the "nerve center" test articulated in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010), a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 1186 (citing *Wisconsin Knife Works v.*

2

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.

*National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959)).  As explained in **Exhibit E**, Chipotle's high-level officers direct, control and coordinate the corporation's activities throughout the United States and internationally from its corporate headquarters in Denver, Colorado.

13. Chipotle Mexican Grill, Inc. is headquartered at 1401 Wynkoop Street, Suite 500, Denver, CO  80202 ("Chipotle's corporate headquarters").  (*See* **Exhibit E** at ¶ 5 [identifying 1401 Wynkoop Street, Suite 500, Denver, Colorado  80202], as the address of Defendant' "Principal Executive Offices".).  Chipotle Mexican Grill, Inc. and its affiliates employ approximately 250 people at the corporation's headquarters in Denver, Colorado.  (*Id.*)  As explained in detail below, the majority of Chipotle's executive officers and principal decision-makers are headquartered in, and work from, its Denver offices.  (*Id.* at ¶¶ 13-23.)

14. Although Chipotle Mexican Grill, Inc. does maintain a few other offices in other parts of the United States, each such office serves a limited purpose and houses a relatively small number of employees.  (*See Id.* at ¶¶ 6-10.)

15. There is a presumption that Chipotle's principal place of business is located at its Denver headquarters.  *See Friend*, 130 S. Ct. at 1192 (a corporation's "'principal place of business' … in practice … should normally be the place where the corporation maintains its headquarters") & 1193-94 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."; "A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters…."); *Wisconsin Knife Works*, 781 F.2d at 1282 ("In the absence of any reason to think that Black & Decker's principal place of business might be in Illinois or Delaware, the two states of which the Defendant is a citizen, the fact that its headquarters is in Maryland warrants an inference that the parties are of diverse citizenship.").

**NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.**

16. In addition to serving as its headquarters, Chipotle's Denver offices are also its "nerve center" because it is the place from which its "high level officers direct, control, and coordinate the corporation's activities." *Friend*, 130 S. Ct. at 1186.

17. Although, as of December 31, 2016 (the date reported in Chipotle's most recently filed Form 10-K), Chipotle Mexican Grill, Inc. operated more than 2,000 restaurants throughout the United States, as well as in Canada, England, France and Germany (*see* **Exhibit E** at ¶ 28), the operations of those restaurants are directed, controlled and coordinated by the high-level officers resident in Chipotle's corporate headquarters. Where, as with Chipotle Mexican Grill, Inc., "'a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.'" *Friend,* 130 S. Ct. at 1191 (quoting *Scot Typewriter Co*., 170 F. Supp. at 865).

18. Chipotle's principal decision makers are its executive officers, executive directors, board of directors, executive regional directors and executive team directors. (*See* the Declaration of Esther Smiley, **Exhibit E** at ¶ 11.)

19. Each of Chipotle's three primary executive officers has offices in and works from the corporation's Denver headquarters, with two of them also working part of their time from a small executive office in New York City. (*Id*. at ¶¶ 12-17.)

20. Chipotle Mexican Grill, Inc.'s Chief Executive Officer is the principal executive officer of the organization and is responsible for the total management of Chipotle Mexican Grill, Inc. by facilitating the operation of its business while guiding its officers and employees in furtherance of the company's objectives. (*Id*. at ¶ 13.) Chipotle Mexican Grill, Inc.'s Chief Executive Officer splits his time between Chipotle's corporate headquarters and a small executive office located in New York, New York. (*Id*.)

4

21. Chipotle Mexican Grill, Inc.'s Chief Financial Officer – who is the corporation's principal financial and accounting officer and is responsible for all financial, accounting and reporting functions of Chipotle Mexican Grill, Inc. – works at Chipotle's corporate headquarters. (**Exhibit E** at ¶ 14.)

22. Chipotle Mexican Grill, Inc.'s Chief Marketing and Development Officer is responsible for crafting Chipotle Mexican Grill, Inc.'s marketing direction and message, deepening its relationship with customers and continuing to attract new customers, and who oversees all advertising and promotional programs (including print, outdoor, transit and radio advertisements), in-store communications and design elements (such as menus and signs). He also oversees Chipotle's physical expansion by overseeing the identification of new markets for Chipotle restaurants and the construction of new restaurants in appropriate markets, throughout the United States and internationally. The Chief Creative and Development Officer splits his time between the corporation's executive office in New York City and Chipotle's corporate headquarters. (*Id.* at ¶ 15.)

23. Chipotle Mexican Grill, Inc.'s Chief Digital Information Officer is responsible for managing the company's technological innovations, including the development of the company's digital and mobile ordering platforms and strategy. The Chief Information Officer works at Chipotle's corporate headquarters. (*Id.* at ¶ 16.)

24. Chipotle Mexican Grill, Inc.'s Chief Restaurant Officer oversees restaurant operations for Chipotle's North American restaurants. The Chief Restaurant Officer is based at Chipotle's corporate headquarters. (*Id.* at ¶ 17.)

25. Chipotle Mexican Grill, Inc. and its affiliates also employ two Restaurant Support Officers, who are responsible for the overall restaurant operations within their respective regions. (*Id.* at ¶ 18.) Both of the Restaurant Support Officers are based in Denver, but spend the majority of their time working in the field and traveling between the restaurants in their respective regions. (*Id.*)

5

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.

26. Three of Chipotle Mexican Grill, Inc.'s executive directors' work at Chipotle's corporate headquarters and the other works at the corporation's executive office in New York City.  (*See* **Exhibit E** at ¶¶ 19-23.)

27. Chipotle Mexican Grill, Inc.'s Executive Director of Food Safety is responsible for overseeing the overall food safety plan, throughout the United States and internationally and works at Chipotle's corporate headquarters.  (*Id*. at ¶ 20.)

28. Chipotle's Executive Director of Supply Chain and Safety is responsible for overseeing the procurement of food ingredients, equipment and supplies for all Defendant's restaurants, throughout the United States and internationally, and is responsible for managing and mitigating all potential sources of risk to the corporation, its employees and its assets and works at Chipotle's corporate headquarters.  (*Id*. at ¶ 21.)

29. Chipotle Mexican Grill, Inc.'s Executive Director – Financial Planning & Analysis is responsible for Chipotle Mexican Grill, Inc.'s financial planning, budgeting and providing financial analysis support for the organization's operations and support departments, and works at Chipotle's corporate headquarters.  (*Id*. at ¶ 22.).

30. Chipotle Mexican Grill, Inc.'s Executive Director of Marketing is responsible for overseeing marketing operations and implementing marketing strategies. He works at the corporation's executive office in New York City.  (*Id*. at ¶ 23.)

31. Chipotle Mexican Grill, Inc.'s board of directors consists of twelve members, including the corporation's CEO.  (*See* **Exhibit E** at ¶ 24.)  The members of Chipotle Mexican Grill, Inc.'s board of directors are responsible for adopting policies to support the company's values and to provide good corporate governance for the entire corporation.  (*Id*.)  Chipotle Mexican Grill, Inc.'s board of directors typically meets three or four times per year in Denver, Colorado, and one time per year in some other, varying location.  (*Id*.)

32. Chipotle Mexican Grill, Inc. and its affiliates also employ in each of the eleven (11) regions:  Northeast North, Central South, Southeast, Pacific South, Mid-

6

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.

Atlantic, Central North, Northeast South, Rocky Mountain, Pacific North, Southwest, and Mid-America. Most of the regions include multiple States, and some of them include portions of foreign countries. California is divided among the Pacific North and Pacific South regions an Executive Team Director who is responsible for business operations in his or her region and an Executive Regional Director who is responsible for multiple regions. Each of the Executive Regional Directors and Executive Team Directors spends the majority of their time working at, and traveling between, the restaurants in their respective region, rather than working from a fixed office location. (*Id.* at ¶ 25.)

33. In addition, Chipotle Mexican Grill, Inc.'s Customer Service department is located in its Denver headquarters. (**Exhibit E** at ¶ 27.)

34. Thus, Chipotle's corporate headquarters is not simply an office where the corporation holds its board meetings or where its principal decision makers can work when they happen to be in Colorado. (*See Id.* at ¶ 30; *see also Friend*, 130 S. Ct. at 1192 [A corporation's "'principal place of business' … should normally be the place where the corporation maintains its headquarters – provided that the headquarters is … not simply an office where the corporation holds its board meetings…."].)

35. Although Chipotle Mexican Grill, Inc. and its affiliates together employ over 60,000 people and operate more than 2,000 restaurants throughout the United States, as well as in Canada, England, France and Germany, almost all of the company's high-level officers who direct, control and coordinate its activities work from the Chipotle's corporate headquarters. In fact, only two of Chipotle's principal decision makers – an Executive Team Director and an Executive Regional Director – are residents of California, but even they split their time working throughout that State. (*See* **Exhibit E** at ¶ 26) As such, virtually all of Chipotle Mexican Grill, Inc.'s core executive and operational functions are carried out from its Chipotle's corporate headquarters, and, to a much lesser extent, from its small office in New York City. With the exception of some accounting functions that are performed by employees in

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.

Columbus, Ohio, Defendant's major administrative functions are conducted at Chipotle's corporate headquarters, as well. (*Id.* at ¶ 29.)

36. This evidence demonstrates that Chipotle Mexican Grill, Inc.'s "nerve center" is Chipotle's corporate headquarters. *See Friend*, 130 S. Ct. at 1186 ("To support its position [that its "nerve center" was in New Jersey], Hertz submitted a declaration by an employee relations manager that … stated that the 'leadership of Hertz and its domestic subsidiaries is located at Hertz's 'corporate headquarters' in Park Ridge, New Jersey; that its 'core executive and administrative functions … are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations … are found' at those two locations."); *Scot Typewriter Co.*, 170 F. Supp. at 864 ("The executive offices of the defendant are located in New York; its president and Chairman of the Board, three of five Vice-Presidents, its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there. Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general services, general office sales, international, advertising and sales promotion departments are all headquartered in New York. Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York.").

37. <u>The Amount in Controversy Exceeds $75,000.00.</u> For the Court to have original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.

38. Plaintiff served a Statement of Damages claiming general damages in the amount of $1,000,000.00 (*See* **Exhibit A**, Statement of Damages). Further, Plaintiff claims she has suffered medical, and will suffer future medical, expenses.[1] (*Id.*)

---

[1] Defendant does not concede that Plaintiff is likely to prevail on any of the asserted claims or that, if Plaintiff does prevail on any of the asserted claims, that she is entitled to any benefits, damages or other relief. Defendant reserves the right to dispute, and to defend against, the asserted claims, both with regard to liability and all forms of requested damages and relief. *See Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th

Moreover, Plaintiff claims loss of earnings to date of $5,000.00 and future loss of earnings of $50,000.00. Plaintiff's claimed damages clearly exceeds the statutory amount in controversy.

       39.    Indeed, specific jury verdicts in premise liability cases in California indicate that verdict awards and settlements may be well in excess of the jurisdictional requisite:

       a.    *Marie Carchedi v. Safeway Inc.*, 2003 WL 26082534 (Cal.Super.); California Superior Court, County of Santa Clara; Case No.: CV800910, (Verdict Date: January 17, 2003): awarding Plaintiff, $291,000.00 ($206,000.00 in economic damages; $85,000.00 in noneconomic damages) in connection with a premise liability/negligence action with claims for personal injuries, medical expenses, lost income and loss of earning capacity (The plaintiff's award was reduced in judgment to $276,450.00 to offset her 5 percent contributory negligence.).

       b.    *Carticellia McLean v. Toys R Us*, 2006 WL 3491172 (Cal.Super.); California Superior Court, County of Riverside; Case No.: RIC412550, (Verdict Date: September 06, 2006): awarding Plaintiff $337,000 in connection with a premise liability action with claims for lost income and pain and suffering (The case was settled for $380,000 before judgment entry.).

       c.    *Dulay v. City of Long Beach*, 24 Trials Digest 19th 24, 2016 WL 3345743 (Cal.Super.); California Superior Court, County of Los Angeles; Case No.: BC510145, (Verdict Date: September 06, 2006): awarding Plaintiff $184,410 ($4,410 to plaintiff for past medical expenses; $25,000 to plaintiff for future medical expenses; $75,000 to plaintiff for past noneconomic loss; $80,000 to plaintiff for future noneconomic loss) in connection with a premise liability action. (The jury found plaintiff was 25 percent at fault and defendant was 75 percent at fault. The court reduced the award to $138,308.).

---

Cir. 2010) (to establish the jurisdictional amount, a removing defendant need not concede liability for that amount).

      d.    *Chakarian v. Jack in the Box Inc.*, 30 Trials Digest 19th 28, 2016 WL 4036296 (Cal.Super.); California Superior Court, County of Los Angeles; Case No.: BC549011, (Verdict Date: June 23, 2016): awarding Plaintiff $3,179,638 ($129,638 to plaintiff from defendant for past medical expenses; $1,500,000 to plaintiff from defendant for future medical expenses; $550,000 to plaintiff from defendant for past pain and suffering; $1,000,000 to plaintiff from defendant for future pain and suffering) in connection with a premise liability/negligence action.

      e.    *Ballard v. Storagepro Inc.*, 48 Trials Digest 19th 6, 2016 WL 6995401 (Cal.Super.); California Superior Court, County of San Francisco; Case No.: CGC-14-541994, (Verdict Date: June 15, 2016): awarding Plaintiff $238,517 ($10,000 for past medical expenses; $73,517 for future medical expenses; $55,000 for past lost income; $100,000 for past pain and suffering) in connection with a premise liability/negligence action.

      f.    *Villagran v. Smart & Final Stores L.L.C.*, 16 Trials Digest 19th 17, 2016 WL 1597204 (Cal.Super.); California Superior Court, County of Los Angeles; Case No.: BC543564, (Verdict Date: March 15, 2016): awarding Plaintiff $1,243,757 ($115,126 for past medical expenses; $228,631 for future medical expenses; $500,000 for past noneconomic damages; $400,000 for future noneconomic damages) in connection with a premise liability/negligence action.

      g.    *Margarita Chavez v. Wal-Mart Stores Inc.*, 2009 WL 6022126 (Cal.Super.); California Superior Court, County of Los Angeles; Case No.: VC-050680, (Verdict Date: July 24, 2009): awarding Plaintiff $321,000 in connection with a premise liability/negligence action.

      h.    *Vera Huelbig v. Prometheus Real Estate Group Inc. DBA Alderwood Apartments et al.*, 27 Nat. J.V.R.A. 4:C10, 2011 WL 10550297 (Cal.Super.); California Superior Court, County of Santa Clara; Case No.: 110CV186515, (Settlement Date: October 05, 2011): awarding Plaintiff $750,000

(settled on the first day of trial. A pre-trial settlement conference, conducted by presiding judge Leslie Nichols) in connection with a premise liability action.

40. Plaintiff also alleges that she is entitled to recover costs of the suit. (*See* **Exhibit A**, Complaint pg. 5.)

41. When the potential costs of special damages and general damages are added to Plaintiff's claims for lost wages, it easily becomes "more likely than not" that the amount at issue in this lawsuit far exceeds the minimum amount required for diversity jurisdiction. *See Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th Cir. 1996).

Dated: August 17, 2017         MESSNER REEVES LLP

By: */s/ Robert B. Hinckley, Jr.*
Robert B. Hinckley, Jr.
Melissa L. Deni
Attorneys for Defendant